UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZUHAIR M. IBRAHIM,<br><br>        Petitioner,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; EMILIO T. GONZALEZ, Director of U.S. Citizen and Immigration Services; GREGORY W. CHRISTIAN, Director of Nebraska Service Center; ROBERT S. MULLER III, Director of Federal Bureau of Investigation,<br><br>        Respondents. | CASE NO.   06cv2071-L (POR)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PETITION FOR A WRIT OF MANDAMUS; AND (2) DIRECTING RESPONDENTS TO ADJUDICATE PETITIONER'S I-485 APPLICATION FORTHWITH** |

      Petitioner, proceeding *pro se*, filed a pleading styled as Plaintiff's Original Complaint for Writ in the Nature of Mandamus & Declaratory Judgment based on Respondents' delayed processing of his I-485 Application to Register Permanent Resident or Adjust Status ("Application" and "Petition," respectively). The court initially reviewed the Petition and found good cause to order Respondents to respond. Accordingly, a Scheduling Order was issued, ordering Respondents to file and serve a responsive memorandum and include any and all documents, including affidavits, if any, relevant to the determination of the issues raised by the Petition. Respondents filed a response challenging subject matter jurisdiction and venue. No documents or affidavits were included with the responsive memorandum. Petitioner timely filed

a reply.  For the reasons stated below, the Petition is **GRANTED IN PART AND DENIED IN PART**.

The facts alleged in the Petition and the authenticity of the documents attached thereto are not disputed by Respondents.  On January 31, 2000, based on asylee status, Petitioner filed his I-485 Application.  (*See* Pet. Exh. A ("Asylee adjustment").)  He subsequently received a Notice of Action indicating his Application was received on February 11, 2000.  The notice stated "[i]t usually takes 518 to 548 days from the date of this receipt for us to process this type of case. . . . We will send you a written notice as soon as we make a decision on this case." (Pet. Exh. A.)

However, the Application was still pending in May 2004, when Petitioner appeared at a service center in San Diego for fingerprinting pursuant to a notice from the immigration officials.  On April 1, 2005, United States Citizenship and Immigration Services ("CIS") issued a Request for Evidence (Pet. Exh. B), to which Petitioner timely responded.  On October 11, 2005, pursuant to a CIS notice, Petitioner appeared at the CIS San Marcos office for biometrics.  (Pet. Exh. C.)  On November 10, 2005, Petitioner called the CIS about the status of his application.  He was informed he was awaiting background check, and should receive a decision within 60 days.  Similarly, a subsequent form letter from the CIS stated his application was under review, and he should receive a decision or notice of other action within 60 days of the November 14, 2005 date of the letter.  (Pet. Exh. D.)  In March 2006, Petitioner again called the CIS to inquire about the status of his application, and was informed he would receive a written decision within 60 days.  In May, July and August, 2006, Petitioner had an attorney inquire on his behalf, but no response was received.  On September 26, 2006, Petitioner filed the Petition pending in this court.

Petitioner alleges that although Respondents had sufficient information to render a decision, they improperly delayed the processing of his Application.  The Application has now been pending for over seven years.  Petitioner argues Respondents failed to properly adhere to their own regulations and violated the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA").  As a result of the delay, Petitioner has been unable gain permanent residency in the United States, work and travel without restrictions, or accrue time to be eligible for

naturalization as a United States citizen.  He requests the court enter an order requiring adjudication of the pending Application, issuance of a "notice of approval," and awarding accrued time and credit toward the permanent residency required for naturalization as a United States citizen.[1]  (Pet. ¶27.)  In their response, Respondents challenge subject matter jurisdiction and venue.

For the reasons which follow, the court has subject matter jurisdiction over Petitioner's claim for delay in processing his Application, venue is proper in this district, and Petitioner is entitled to a writ of mandamus directing Respondents to adjudicate his Application forthwith. To the extent Petitioner requests any other relief, it is denied.

Petitioner bases subject matter jurisdiction on federal question pursuant to 28 U.S.C. §1331, mandamus relief pursuant to 28 U.S.C. §1361, declaratory relief pursuant to 28 U.S.C. §2201, and the APA.  Respondents correctly argue that neither the Declaratory Relief Act, 28 U.S.C. §2201 nor the APA provide an independent basis for subject matter jurisdiction.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) (Declaratory Relief Act); *Califano v. Sanders*, 430 U.S. 99, 106-07 (1977) (APA).  However, the court can exercise subject matter jurisdiction under either 28 U.S.C. §1331 or §1361.

"[A]gency actions are generally reviewable under federal question jurisdiction, pursuant to 28 U.S.C. §1331." *Spencer Enter., Inc. v United States*, 345 F.3d 683, 687 (9th Cir. 2003) (citing *Califano,*, 430 U.S. at 105).  "Even if no statute specifically provides that an agency's decisions are subject to judicial review, the Supreme Court customarily refuses to treat such silence 'as a denial of authority to an aggrieved person to seek appropriate relief in the federal courts,' and this custom has been 'reinforced by the enactment of the Administrative Procedure Act, which embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the

/ / / / /

---

[1] It appears Petitioner later withdrew some of these requests.  (*See* Reply at 3 ("The Plaintiff does not ask the court to compel the Respondents to grant his application for residency but rather asks the court to compel the Respondents to adjudicate his application.").)

meaning of a relevant statute.'" *Id.* at 687-88 (quoting *Stark v. Wickard*, 321 U.S. 288, 309 (1944) & *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)) (internal brackets omitted).

Accordingly, the question presented is "whether any statute has deprived the federal courts of jurisdiction to review the particular agency action at issue . . .." *Id.* at 688. The statute relevant to this question is 8 U.S.C. §1252(a)(2)(B)(ii), which provides in pertinent part:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
> . . .
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

This provision has been interpreted to bar judicial review of those acts which are within the Attorney General's discretion as specified by statute. *Spencer Enter.*, 345 F.3d at 688-91.

Petitioner's Application was filed pursuant to 8 U.S.C. §1159 [Adjustment of status of refugees] and 8 C.F.R. §209.2 [Adjustment of status of alien granted asylum]. (*See* Pet. Exh. A ("Asylee adjustment").) Pursuant to section 1159(b) of the statute and section 209.2(c) of the regulations, asylees may apply for permanent resident status by filing an I-485 application. Under section 1159(b), the Attorney General "may adjust" an asylee's status to permanent residency, provided certain requirements are met. Accordingly, the decision to grant or deny the application is discretionary. The regulations further provide that the "applicant shall be notified of the decision." 8 C.F.R. §209.2(f). The duty to adjudicate an application, by either granting or denying it, is therefore not discretionary. *See Singh v. Still*, 470 F. Supp. 2d 1064, 1067 & n.6 (N.D. Cal. 2006) (duty to adjudicate mandatory); *Aboushaban v. Mueller*, 2006 WL 3041086 (N.D. Cal. Oct. 24, 2006) (duty to adjudicate nondiscretionary); *see also Razaq v. Poulos*, 2007 WL 61884 (N.D. Cal. Jan. 8, 2007) (duty to adjudicate I-130 application mandatory under similar statutory language). The statute and the regulations are silent about the time within which the adjudication must be completed.

Section 1252(a)(2)(B)(ii) "withdraws jurisdiction wherever discretionary authority is 'specified' by statute" and not otherwise. *Spencer Enter.*, 345 F.2d at 691. Section 1159 does

not address, much less specify, any discretion associated with the time to adjudicate applications. *See* 8 U.S.C. §1159; *Duan v. Zamberry*, 2007 WL 626116, at *2 (W.D. Pa. Feb. 23, 2007); *see also Elmalky v. Upchurch*, 2007 WL 944330, at *4 (N.D. Tex. Mar. 28, 2007). Section 1252(a)(2)(B)(ii) therefore does not preclude judicial review of a claim about the delay in adjudication.

In the alternative, judicial review of the same claim is appropriate under 28 U.S.C. §1361, which provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1998) (finding jurisdiction under analogous circumstances: "[D]iscretionary decision to grant or deny a visa petition is not normally subject to judicial review. [Citations omitted] However, when the suit challenges the authority . . . to take or fail to take an action . . ., jurisdiction exists."); *Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 n.6 (9th Cir. 1997) (rejected argument that inaction involved a non-discretionary act because "at some level, the government has a general non-discretionary duty to process the applications in the first instance"). Respondents argue the court lacks subject matter jurisdiction because the official duty at issue is discretionary, while one of the requirements for mandamus is that the official's duty be "nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003). For the reasons discussed above, Respondents' duty to adjudicate Petitioner's Application is nondiscretionary.

Accordingly, the court has subject matter jurisdiction to decide Petitioner's claim of delay in the processing of his Application. To the extent Petitioner requests other relief, subject matter jurisdiction is lacking. Initially Petitioner requested an order ordering Respondents to provide him with a "notice of approval." (Pet. ¶27(b).) The court understands this as ordering Respondents to approve his Application.[2] Since granting or denying the Application is within Attorney General's discretion, the court lacks subject matter jurisdiction to award such relief.

---

[2] It appears Petitioner withdrew this request in his reply. (Reply at 3 ("The Plaintiff does not ask the court to compel the Respondents to grant his application . . ..").)

*See Spencer Enter*., 345 F.3d at 690.  In addition, Petitioner initially requested an order requiring Respondents to award him "accrued time, credited as a Permanent Resident or Adjusted Status towards Naturalization as a citizen of the United States." (Pet. ¶27(c).)  Since it is unknown at this time whether Petitioner's Application will be grated or denied, this request is premature, and therefore also outside the court's subject matter jurisdiction.  *See Exxon Corp. v. Heinze*, 32 F.3d 1399, 1404 (9th Cir. 1994).

As to Petitioner's claim of delay in the processing of his Application, the applicable venue provision is 28 U.S.C. §1391(e).  It provides in pertinent part that in a "civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority," venue may lie in "any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred . . ., or (3) the plaintiff resides . . .." Respondents correctly argued that venue is improper in this district under subsections (1) and (3). They neglected to address subsection (2); however, which provides a valid basis for venue in this district.

For purposes of section 1391(e)(1), "[w]hat controls is the official residence of the federal defendant where the official duties are performed and not the personal residence of an individual who is a defendant." *Reuben H. Donnelley Corp. v. Fed. Trade Comm'n*, 580 F.2d 264, 267 (7th Cir. 1978); *Lamont v. Haig*, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978); William W. Schwartzer *et al.*, Federal Civil Procedure Before Trial ¶4:426 (2007).  In this case, none of the named Respondents perform official duties in this district.  Accordingly, section 1391(e)(1) is not a proper basis for venue in this district.

Pertinent to section 1391(e)(3), Petitioner lives in La Jolla, California, which is within this district.  Although no statute speaks to the case in which an alien is a plaintiff, Charles Alan Wright *et al.*, Federal Practice and Procedure §3810 (1986 & Supp. 2006), courts have held that for venue purposes nonresident aliens do not "reside" in any district of the United States, *Galveston, H. & S.A. Ry. Co. v. Gonzales*, 151 U.S. 496, 506-07 (1894) ("An alien . . . is assumed not to reside in the United States . . .."); *Williams v. United States*, 704 F.2d 1222, 1225 (7th Cir. 1983) ("An alien, for purposes of establishing venue, is presumed by law not to reside

in any judicial district of the United States regardless of where the alien actually lives."); *see* 28 U.S.C. §1391(d) (alien defendants may be sued in any district); *but cf.* 28 U.S.C. §1332(a) (for purposes of diversity jurisdiction alien admitted for permanent residence deemed citizen of the state where located).  Because Petitioner is a foreign national who is applying for permanent resident status, section 1391(e)(3) is not a proper basis for venue in this district.[3]

Reading section 1391(e)(1) and (3) to preclude venue in this district would not leave Petitioner without a remedy in federal court, because the action could be transferred to the District of Columbia or perhaps Nebraska.  However, litigating far from home creates yet another hardship for Petitioner who has already spent over seven years awaiting decision.  The court need not reach the issue whether or where to transfer this action, because a "substantial part of the events or omissions giving rise to the claim occurred" within this district, providing a valid basis for venue pursuant to section 1391(e)(2).

After Petitioner moved to La Jolla in 2003, the CIS directed him to appear locally.  For example, in May 2004, he appeared at the service center in San Diego for fingerprinting, and in October 2005, he appeared at the service center in San Marcos for fingerprinting and biometrics.  (Pet. ¶¶14&16, Ex. C.)  Accordingly, events and omissions of at least one and a half years immediately prior to filing the Petition took place in this district.  They are significant and material to Petitioner's claim.  Even if other substantial events or omissions had occurred outside this district, this would not mandate a different venue.  Under section 1391(e)(2), Petitioner is

---

[3] This result is particularly troubling in this case.  Petitioner filed this action precisely because he seeks permanent resident status.  Denying the Petition because he has no residence for venue purposes would, in effect, reward Respondents for delay in adjudicating the Application.  In the context of immigration matters, denying aliens any residence in the United States undercuts the purpose of the Mandamus and Venue Act.  The intent of the act, which includes 28 U.S.C. §1391(e) as the venue provision and 28 U.S.C. §1361 as the substantive mandamus provision, was to "provide nationwide venue for the convenience of individual plaintiffs in actions which are nominally against an individual officer but are in reality against the Government."  *Stafford v. Briggs*, 444 U.S. 527, 535, 540, 542 (1980).  The "primary purpose of the venue provision is to expand the scope of venue in a mandamus action beyond the District of Columbia."  *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1180 (9th Cir. 1983).

Furthermore, the distinction between resident aliens and nonresident aliens raises due process and equal protection concerns.  *See Alegria v. United States*, 945 F.2d 1523, 1527-28 (11th Cir. 1991); *Williams*, 704 F.2d at 1227; *see also Plyler v. Doe*, 457 U.S. 202, 230 (1982) (finding an equal protection violation where school districts required illegal aliens to pay full tuition while admitting documented aliens without charge).

not limited to the district where the most substantial events or omissions giving rise to the action occurred. *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998) ("The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in district A, too.  Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial."); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2nd Cir. 1992) (the statute does not require the district court to determine the best venue); *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2nd Cir. 2005) ("language contemplates that venue can be appropriate in more than one district"); *Dist. No. 1, Pac. Coast Dist., M.E.B.A. v. Alaska*, 682 F.2d 797, 799 (9th Cir. 1982); *Radical Prod., Inc. v. Sundays Distributing*, 821 F. Supp. 648 (W.D. Wash. 1992) (held that substantial part of events in trademark infringement case occurred in district where confusion would occur, even though product was not sold there).  Section 1391(e)(2) therefore provides a proper basis for venue in this district, even if substantial events or omissions took place in other districts.

The court next turns to the issue whether a writ of mandamus is appropriate relief in this case.  The purpose of mandamus is to compel a federal official or agency to perform an official duty owed. 28 U.S.C. §1361.  "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available. *Kildare*, 325 F.3d at 1084 (internal quotation marks and citations omitted).  The court retains discretion in ordering mandamus relief even if the three requirements are satisfied. *Indep. Mining*, 105 F.3d at 505.

Respondents argue Petitioner cannot establish the second requirement, nondiscretionary ministerial duty, because the statute covering Petitioner's Application does not provide a time period in which such applications must be adjudicated, and the adjudication of the application is in the Attorney General's discretion.  The fact that neither 8 U.S.C. §1159 nor 8 C.F.R. §209.2 establish a deadline does not render the time for application processing discretionary.  For the reasons discussed above in the context of subject matter jurisdiction, the duty to adjudicate the

applications is nondiscretionary and ministerial. Moreover, the statute implies[4] that this duty must be carried out within a reasonable time:

> While the substance of the decision whether to grant or deny [the application] is obviously discretionary, the duty to process the application is just as obviously ministerial. . . . [¶] . . . Congress had to have intended the executive branch to complete these 'adjudications' within a reasonable time - because imposing no time constraint at all . . . would be tantamount to giving the government the power to decide whether it would decide. . . . Congress ordered the executive branch to make decisions on these applications. Congress would have eviscerated that mandate . . . if it had given the executive branch full discretion to determine the time frame for . . . processing of the applications. A 'duty to decide' becomes no duty at all if it is accompanied by unchecked power to decide when to decide.

*Razaq*, 2007 WL 61884, at *3; *see also Fallini v. Hodel*, 783 F.2d 1343, 1347 (9th Cir. 1986) (although the Congress did not provide a time limit for government action, an unreasonable delay would violate the spirit and purpose of the statute); *Lazli v. USCIS*, 2007 WL 496351, at *4 (D. Or. Feb. 12, 2007) (implied duty to adjudicate within a reasonable time); *Elmalky*, 2007 WL 944330, at *5 ("the USCIS has a *nondiscretionary* duty to issue *some* decision . . . within a reasonable time") (emphasis in original). The nondiscretionary duty to adjudicate applications in a reasonable time satisfies the second requirement for mandamus relief.

Whether Petitioner's claim of delay is clear and certain so as to meet the first requirement depends on whether Respondents unreasonably delayed the processing of his application. *See Singh*, 470 F. Supp. 2d at 1067. Similarly, for relief under the APA, Petitioner must show unreasonable delay pursuant to 5 U.S.C. §555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.") or §706(1) ("The reviewing court shall [¶] (1) compel agency action unlawfully withheld or unreasonably delayed . . ..").  "Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the [Mandamus and Venue

/ / / / /

---

[4] "The fact that the statute requires construction by the court in order to determine what duties it creates does not mean that mandamus is not proper to compel the officer to perform the duty, once it is determined." *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986) (internal quotation marks, brackets, ellipsis and citation omitted).

Act], 'in essence,' as one for relief under §706 of the APA." *Indep. Mining Co.*, 105 F.3d at 507 (quoting *Japan Whaling Ass'n v. Am. Catacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).

Typically, in the absence of a statutory deadline for agency action, courts assess the delay by examining a non-exhaustive list of six *TRAC* factors. *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002); *see also Razaq*, 2007 WL 61884, at *6. The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomm. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks and citations omitted). Although the *TRAC* factors have been used primarily to assess government delays under the APA, *see, e.g., Brower v. Evans*, 257 F.3d 1058 (9th Cir. 2001), they have been also used for purposes of mandamus relief, *see Indep. Mining*, 105 F.3d at 507-12 (weighed TRAC factors and affirmed denial of mandamus relief).

While Congress has not imposed a timetable for application processing, the CIS has established one. As of December 5, 2006, it was processing I-485 asylee applications with the receipt notice date of January 1, 2004. (Reply Exh. A.) As of May 18, it was processing applications with the receipt notice date of January 1, 2006. *See* https://egov.immigration.gov/cris/jsps/Processtimes.jsp?ServiceCenter=NSC (last visited May 22, 2007). Petitioner's Application bears the receipt notice date of February 11, 2000. (Pet. Exh. A.) Its processing has been delayed for over six years by the agency's own standards. Nothing in the record suggests that Petitioner may have contributed to the delay by failing to provide necessary information or timely appear for appointments and interviews, or that there exist higher priorities necessitating

/ / / / /

/ / / / /

the slow progress in Petitioner's case.[5] Requiring Respondents to adjudicate the Application within seven years is not contrary to rule of reason.  On the other hand, delays in the immigration arena affect human health and welfare, and are therefore less tolerable than those that implicate only economic interests.  *See Singh*, 470 F. Supp. 2d at 1069; *Razaq*, 2007 WL 61884, at *7.  Petitioner has been seriously prejudiced by the inordinate delay because he has been unable to freely travel or work without restrictions, and his efforts toward reaching United States citizenship have been put on hold.  Based on the foregoing, a seven-year delay in the processing of Petitioner's Application is unreasonable.  *See, e.g., Singh*, 470 F. Supp. 2d at 1071 (seven years); *Aboushaban*, 2006 WL 3041086, at *2 (seven and a half years).  Courts have afforded relief even where delay was significantly shorter.  *Singh*, 470 F. Supp. 2d at 1071 (citing cases).  The court therefore finds that Petitioner's right is clear and certain so as to meet the first requirement for mandamus relief.  In the alternative, the court finds Petitioner has met the requirements of the APA under 5 U.S.C. §706(1).

With respect to the last requirement, Respondents do not suggest there is any other remedy available to Petitioner other than a writ of mandamus directing Respondents to adjudicate the Application forthwith.  *See Singh*, 470 F. Supp. 2d at 1071-72.

Based on the foregoing, **IT IS HEREBY ORDERED** as follows:

1. The Petition is **GRANTED** insofar as it seeks relief from delay in processing Petitioner's pending I-485 application, and **DENIED** to the extent it seeks any other relief.

2. Respondents shall forthwith complete the adjudication of Petitioner's pending I-485 Application.

3. The Clerk of the Court is directed to enter judgment and close the file in this case.

**IT IS SO ORDERED.**

DATED: May 24, 2007

M. James Lorenz
United States District Court Judge

---

[5] Respondents provided no information pertinent to the analysis of the *TRAC* factors, despite the court's urging in the Scheduling Order to include in their response any materials relevant to the determination of the issues raised by the Petition.

1 | COPY TO:

2 | Hon. Louisa S. Porter,
United States Magistrate Judge

3 | All parties/counsel